**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-CV-109 |
| v. | ) | |
| | ) | |
| SHREE HARI HOSPITALITY, LLC; | ) | Judge:_____ |
| RED ROOF INNS, INC. RRF HOLDING | ) | |
| COMPANY, LLC; RED ROOF | ) | |
| FRANCHISING, LLC; RRI WEST | ) | |
| MANAGEMENT, LLC; AND | ) | |
| JANE DOE (A.N.S.), | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its counsel, and for its Complaint for Declaratory Judgment against Defendants, Shree Hari Hospitality, LLC ("Shree Hari"); Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC, RRI West Management, LLC (collectively, the "Red Roof Inn Entities"); and Jane Doe ("A.N.S."), it states as follows:

## NATURE OF ACTION

1.      Nautilus asserts this claim pursuant to 28 U.S.C. § 2201 for a declaration of its rights and obligations under a Nautilus insurance policy issued to Shree Hari.

2.      According to an underlying lawsuit filed before this Court, A.N.S. was allegedly "trafficked continuously from June 1, 2014 through December 31, 2016, including specifically from June 1, 2014 through September 30, 2015" at a Red Roof Inn franchise located at 10 Berryhill Road, in Columbia, South Carolina ("Property").

1

3.     Nautilus asks this Court to declare its rights and obligations as they specifically relate to the claims asserted by A.N.S. against its named insured, Shree Hari, and putative insureds, the Red Roof Inn Entities, in the aforementioned underlying lawsuit.

4.     As set forth with more specificity in this Complaint, Nautilus is entitled to a declaratory judgment that it owes no duty to defend and/or indemnify Shree Hari and/or the Red Roof Inn Entities pursuant to several coverage exclusions found in the plain language of the Nautilus insurance policy.

## THE PARTIES

5.     Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona, with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold throughout the country.

6.     At all times relevant hereto, Shree Hari was a limited liability company organized under the laws of South Carolina, with its principal place of business in South Carolina. Shree Hari consists of the following member:

- Sonal Thakkar, who, at all times relevant hereto, was a citizen of South Carolina.

7.     At all times relevant hereto, Red Roof Inns, Inc. was a corporation organized under the laws of Delaware, with its principal place of business in Ohio.

8.     At all times relevant hereto, RRF Holding Company, LLC was a limited liability company organized under the laws of Delaware, with its principal place of business in Ohio. RRF Holding Company, LLC, consists of the following member:

- Red Roof Inns, Inc., a corporation organized under the laws of Delaware, with its principal place of business in Ohio.

9. At all times relevant hereto, Red Roof Franchising, LLC was a limited liability company organized under the laws of Delaware, with its principal place of business in Ohio. Red Roof Franchising, LLC consists of the following member:

- Red Roof Inns, Inc., a corporation organized under the laws of Delaware, with its principal place of business in Ohio.

10. At all times relevant hereto, RRI West Management, LLC was a limited liability company organized under the laws of Delaware, with its principal place of business in Ohio. RRI West Management, LLC consists of the following member:

- Red Roof Inns, Inc., a corporation organized under the laws of Delaware, with its principal place of business in Ohio.

11. At all times relevant hereto, A.N.S. was a citizen of South Carolina.

## JURISDICTION

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is completely diverse, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, this matter relates to an insurance policy providing in excess of $75,000 in coverage and an underlying lawsuit seeking damages far in excess of $75,000.

## VENUE

13 Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred within this judicial district. Specifically, the underlying lawsuit is currently pending before this Court, and a motion to transfer venue in the

underlying lawsuit was denied, with the Court holding that the United States District Court for the Southern District of Ohio was the proper venue for the underlying lawsuit[1].

## THE UNDERLYING LAWSUIT

14.     On or about June 3, 2024, A.N.S. filed a Complaint against the Red Roof Inn Entities and Shree Hari in the United States District Court for the Southern District of Ohio, where it is pending under case number 2:24-cv-03076 ("*A.N.S.* Lawsuit"). (A true and correct copy of the *A.N.S.* Lawsuit is attached hereto as **Exhibit A.**)

15.     The *A.N.S.* Lawsuit arises out of the alleged culpability of Shree Hari and the Red Roof Inn Entities as it relates to the alleged sex trafficking of A.N.S. "from June 1, 2014 through December 31, 2016, including specifically from June 1, 2014 through September 30, 2015 at the [Property]." (Ex. A, ¶ 24.)

16.     The *A.N.S.* Lawsuit alleges that the named defendants (all of which were allegedly involved in the operation of a Red Roof Inn at the Property) derived financial benefits from sex trafficking at the Property "by providing a venue where traffickers could exploit victims, including [A.N.S.], with minimal risk of detection or interruption." (Ex. A, ¶ 6.)

17.     The *A.N.S.* Lawsuit alleges that the Red Roof Inn Entities owned, operated, controlled, and/or managed the Property as franchisors. (Ex. A, ¶¶ 18.)

18.      The *A.N.S.* Lawsuit further alleges Shree Hari operated as the franchisee. (Ex. A, ¶ 26.)

19.     With respect to A.N.S., the *A.N.S.* Lawsuit alleges that she was "trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts." (Ex. A, ¶ 24.)

---

[1] In the underlying lawsuit, this Court noted that the "RRI Defendants do not assert that this Court lacks personal jurisdiction or that venue in the Southern District of Ohio is improper. Further, the Court finds that it has personal jurisdiction, and the Southern District of Ohio is a proper forum pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), (d)."

20. The *A.N.S.* Lawsuit alleges that A.N.S. was allegedly "trafficked continuously from June 1, 2014 through December 31, 2016, including specifically from June 1, 2014 through September 30, 2015 at the [Property]." (Ex. A, ¶ 24.)

21. Per the *A.N.S.* Lawsuit, "[b]etween June 1, 2014 and September 30, 2015, [A.N.S.] was trafficked an incalculable number of times at the [Property]." (Ex. A, ¶ 25.)

22. Per the *A.N.S.* Lawsuit, at all relevant times, the Red Roof Inn Entities "were directly involved in the relevant operations of the [Property] and exercised systemic control over [Shree Hari] with respect to operation of the [Property] such that [Shree Hari] were the [Red Roof Entities'] actual agents for the operation of the [Property]. The [Red Roof Inn Entities] also retained control over aspects of the operations of the [Property] directly related to the claims of [A.N.S.]." (Ex. A, ¶ 27.)

23. The *A.N.S.* Lawsuit further alleges that A.N.S.'s traffickers frequently used the Property for sex trafficking with the approval, acquiescence, and/or implicit support of the Defendants and their employees. (Ex. A, ¶ 28.)

24. The *A.N.S.* Lawsuit alleges that there were obvious signs that A.N.S. was being trafficked at the Property such that the Red Roof Inn Entities and Shree Hari "know, or through the exercise of reasonable diligence should have known, that they were participating in a venture causing her sexual exploitation." (Ex. A, ¶ 29.)

25. The *A.N.S.* Lawsuit further alleges that during interactions with staff at the Property, A.N.S. and her trafficker exhibited obvious signs of trafficking, including that A.N.S. would not provide an identification card, the trafficker would pay in cash or prepaid cards, the trafficker openly smoked marijuana during the stay, and A.N.S. and the trafficker would book rooms with little or no luggage. (Ex. A, ¶ 75.)

26. The *A.N.S.* Lawsuit alleges that, in common areas, A.N.S. allegedly had limited access to clothing and was forced to wear inappropriate clothing, appeared malnourished and sleep deprived, had visible bruises, showed obvious signs of fear and anxiety, was kept in a drugged state, and was openly yelled at by her trafficker. (Ex. A, ¶ 76.)

27. The *A.N.S.* Lawsuit alleges that there was heavy foot traffic in and out of her room, men entering and exiting her rooms at unusual times, and men entering and exiting her room for brief periods. (Ex. A, ¶ 77.)

28. The *A.N.S.* Lawsuit alleges that the Red Roof Inn Entities retained control over the training of the staff regarding human trafficking and allegedly failed to implement proper means to prevent sexual exploitation and human trafficking. (Ex. A, ¶ 87.)

29. The *A.N.S.* Lawsuit also alleges that the Red Roof Inn Entities also retained control over the response of its hotels to human trafficking, including the development of proper policies and procedures to prevent it; the details of reservations including rules relating to the making of reservations, payment methods, and identification requirements; and generally exercised systemic and pervasive control over Shree Hari's day to day operations of the Property. (Ex. A, ¶¶ 88- 96.)

30. Count I of the *A.N.S.* Lawsuit asserts a claim for perpetrator liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against the Red Roof Inn Entities and Shree Hari because they allegedly harbored victims of human trafficking either knowingly or in reckless disregard of the fact that the victims would be trafficked and knowingly received financial benefit by assisting, supporting, or facilitating a venture engaged in trafficking. (Ex. A, ¶¶ 109-112.)

31. Count II of the *A.N.S.* Lawsuit asserts a claim for beneficiary liability under the TVPRA, alleging that the Red Roof Inn Entities and Shree Hari knowingly benefited from

participation in a venture that they knew, or should have known, was engaged in human trafficking. (Ex. A, ¶¶ 113-116.)

32.     Count III of the *A.N.S.* Lawsuit asserts a claim for vicarious liability for TVPRA violations, alleging that Shree Hari "acted as the actual agent" of the Red Roof Inn Entities when operating the Property. (Ex. A, ¶¶ 117-121.)

33..    Shree Hari and the Red Roof Entities requested that Nautilus provide a defense and indemnify them pursuant to the Nautilus Policies in place in conjunction with the claims asserted against them in the *A.N.S.* Lawsuit.

34.     Nautilus is currently providing a defense to Shree Hari and the Red Roof Entities under a Reservation of Rights, and will be irreparably damaged if it has to continue to do so since there is no coverage under the applicable policy.

## THE NAUTILUS POLICIES

35.     Nautilus issued a multi-peril commercial lines insurance policy to Shree Hari through policy number NN583644 for the policy period of May 31, 2015, to May 31, 2016 ("CGL Policy"). (A true and correct copy of the CGL Policy is attached hereto as **Exhibit B.)**

36.     The CGL Policy provides, among other things, commercial general liability coverage subject to a $1,000,000 limit of liability per occurrence and a general aggregate limit of $2,000,000. (Ex. B.)

37.     Nautilus issued an excess liability insurance policy to Shree Hari through policy number AN020631 for the policy period of May 30, 2015, through May 30, 2016 ("Excess Policy"). (A true and correct copy of the Excess Policy is attached hereto as **Exhibit C.)**

38.     The Excess Policy provides, among other things, excess liability coverage subject to a $5,000,000 limit of liability per loss event and a policy aggregate limit of $5,000,000. (Ex. C.)

(Unless otherwise noted, the CGL Policy and the Excess Policy will be referred to collectively as the "Nautilus Policies".)

**COUNT I**

**THE CGL POLICY'S "ALL ASSAULT OR BATTERY EXCLUSION" BARS OVERAGE FOR THE _A.N.S._ LAWSUIT**

39.　　Nautilus adopts and re-alleges the allegations in paragraphs 1 through 38 of its Complaint for Declaratory Judgment as paragraph 39 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

40.　　The CGL Policy incorporates an exclusion relating to all assault or battery (Form L210 (02/08)), which provides, in pertinent part, the following:

**EXCLUSION - ALL ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**　　The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – B Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability,** and **Coverage C – Medical Payments:**

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

**1.**　　Actual or alleged assault or battery;

**2.**　　Physical altercation; or

**3.**　　Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

**1.**　　Insured;

8

**2.** "Employee";

**3.** Patron; or

**4.** Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

**1.** All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

**2.** Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    **a.** Emotional distress for loss of society, services, consortium or income; or

    **b.** Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

**3.** Any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.** We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

* * *

(Ex. B, hereinafter, the "A&B Exclusion").

41. By its plain language, the A&B Exclusion bars coverage for any "bodily injury" or

"personal and advertising injury" arising out of the actual or alleged assault or battery, physical

altercations, or *acts or omissions in connection with the prevention or suppression of such acts.* (Ex. B, emphasis added.)

42.     Per the plain language of the CGL Policy, the A&B Exclusion applies regardless of whether any actual or alleged damages are alleged to have been caused by an insured, an employee of the insured, a patron of the insured or "any other person." (Ex. B.)

43.     Additionally, the A&B Exclusion bars coverage for "[a]ll causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation." (Ex. B.)

44.     Here, the *A.N.S.* Lawsuit arises directly out of the alleged assault or battery, and/or the failure to prevent or suppress the assault or battery, of A.N.S. (Ex. A.)

45.     Accordingly, the A&B Exclusion bars coverage for the claims asserted in the *A.N.S.* Lawsuit.

46.     Nautilus has and had no duty under the CGL Policy to defend Shree Hari or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit.

47.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that the "A&B Exclusion" bars all coverage under the CGL Policy for the claims asserted in the *A.N.S.* Lawsuit;

     c.     Find and declare that Nautilus has and had no duty under the CGL Policy to defend Shree Hari and/or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari and/or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit; and

     d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## THE RED ROOF INN ENTITIES ARE NOT INSUREDS ON THE NAUTILUS POLICIES

48.     Nautilus adopts and re-alleges the allegations in paragraphs 1 through 47 of its Complaint for Declaratory Judgment as paragraph 46 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

49.     The Red Roof Inn Entities are not named insureds on the Nautilus Policies. (Ex. B and C.)

50.     However, by endorsement, Red Roof Franchising LLC and Red Roof Inns Inc. (but not RRF Holding Company, LLC nor RRI West Management LLC) were added as additional insureds on the CGL Policy for certain instances, as follows:

**Endorsement Effective** Date: 02/10/2016

### GENERAL CHANGE ENDORSEMENT

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING ADDITIONAL INSURED IS ADDED TO THE POLICY AND APPLIES ON FORM CG2029:

RED ROOF FRANCHISING LLC
RED ROOF INNS INC.
C/O WILLIS HOSPITALITY GROUP

PREMIUM IS FULLY EARNED.

NO FURTHER CHANGES

                           \* \* \*

(Ex. B.)

51.     Form CG 2029, in turn, provides the following:

**ADDITIONAL INSURED – GRANTOR OF FRANCHISE**
* * *

**SCHEDULE**

**Name of Person or Organization**

        RED ROOF FRANCHISING LLC
        RED ROOF INNS INC.

        **Address:**

        C/O WILLIS HOSPITALITY GROUP
        225 SW COLUMBIA ST SUITE 600
        PORTLAND, OR 97201
                            * * *

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

(Ex. B, hereinafter, the "A.I. Endorsement").

52.     The A.I. Endorsement was added to the CGL Policy through an endorsement with an effective date of "02/10/2016". (Ex. B.)

53.     The *A.N.S.* Lawsuit alleges that A.N.S. was "trafficked continuously from June 1, 2014 through December 31, 2016, ***including specifically from June 1, 2014 through September 30, 2015" at the Property.*** (Emphasis added.)

54.     Accordingly, under the plain allegations of the *A.N.S.* Lawsuit, the alleged trafficking of A.N.S. at the Property occurred before certain of the Red Roof Entities were added to the Nautilus Policies as additional insureds.

55.     Therefore, the Red Roof Inn Entities are not additional insureds on the Nautilus Policies as it relates to the claims asserted in the *A.N.S.* Lawsuit.

56.     Nautilus has and had no duty under the Nautilus Policies to defend the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit.

57.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that the Red Roof Inn Entities are not additional insureds under the plain and unambiguous language of the CGL Policy;

c.     Find and declare that Nautilus has and had no duty under the CGL Policy to defend the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## ALLEGED INJURIES OCCURRED OUTSIDE OF THE POLICY PERIOD

58.     Nautilus adopts and re-alleges the allegations in paragraphs 1 through 57 of its Complaint for Declaratory Judgment as paragraph 58 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

59.     The Nautilus Policies provide coverage for "bodily injury", "property damage", and "personal and advertising injury" that occur during the policy period. (Exs. B and C.)

60.     Even if, for the sake of argument, the *A.N.S.* Lawsuit asserted claims that would constitute "bodily injury", "property damage", and/or "personal and advertising injury" and coverage is not otherwise barred – which Nautilus expressly denies – any "bodily injury", "property damage", and/or "personal and advertising injury" must occur during the policy period for coverage to be triggered. (Exs. B and C.)

61.     The *A.N.S.* Lawsuit alleges that A.N.S. was "trafficked continuously from June 1, 2014 through December 31, 2016, ***including specifically from June 1, 2014 through September 30, 2015" at the Property.***  (Ex. A, emphasis added.)

62.     The CGL Policy had a policy period of May 31, 2015, to May 31, 2016. (Ex. B.)

63.     The Excess Policy had a policy period of May 30, 2015, through May 30, 2016. (Ex. C.)

64.     To the extent that A.N.S. was injured outside of the policy period of the Nautilus Policies, the Nautilus Policies provide no coverage for any such injuries.  (Exs. B and C.)

65.     Nautilus has and had no duty under the Nautilus Policies to defend Shree Hari and/or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari and/or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit, as it relates to any injuries that took place outside of the policy period of the Nautilus Policies.

66.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

        a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that some or all of the claims asserted in the *A.N.S.* Lawsuit fall outside the policy period of the Nautilus Policies;

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Shree Hari and/or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari and/or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit, as it relates to any injuries that took place outside of the policy period of the Nautilus Policies;

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## NO COVERAGE FOR PUNITIVE DAMAGES

67.     Nautilus adopts and re-alleges the allegations in paragraphs 1 through 66 of its Complaint for Declaratory Judgment as paragraph 58 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

68.     The CGL Policy incorporates the following exclusion relating to punitive or exemplary damages:

### EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES
\* \* \*

The following exclusion is **added** to **2. Exclusions** of **Section I**:

This insurance does not apply to punitive or exemplary damages.

(Ex. B, hereinafter, the "Punitive or Exemplary Damages Exclusion".)

69.     Here, the *A.N.S.* Lawsuit expressly seeks "Exemplary/Punitive damages…." (Ex. A.)

70.     Under the terms of the Punitive or Exemplary Damages Exclusion, Nautilus has no duty to indemnify any insured for any punitive and/or exemplary damages that may ultimately be awarded in the *A.N.S.* Lawsuit. (Ex. B.)

71.     Accordingly, neither Shree Hari nor the Red Roof Inn Entities are entitled to indemnification for any award of punitive or exemplary damages, if any, ultimately entered in the *A.N.S.* Lawsuit.

72.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that the Punitive or Exemplary Damages Exclusion bars recovery under the CGL Policy for any award of punitive or exemplary damages in the *A.N.S.* Lawsuit; and

c.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## NO COVERAGE UNDER THE EXCESS POLICY

73.     Nautilus adopts and re-alleges the allegations in paragraphs 1 through 72 of its Complaint for Declaratory Judgment as paragraph 73 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

74.     The Excess Policy provides, in pertinent part, the following with respect to the coverage afforded thereunder:

### EXCESS LIABILITY POLICY
* * *

**SECTION I – EXCESS LIABILITY COVERAGE**

**1.     Insuring Agreement**

a.   We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided:

(1)   The aggregate amount of all limits of "Underlying Insurance", as shown in the Schedule of "Underlying Insurance" has been exhausted by payment of judgments, settlements, costs or expenses   * * *

b.   Except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusions of this policy, this policy will provide the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance". If any terms, definitions, limits of insurance, conditions or exclusions of this policy are more restrictive than those of the "controlling underlying insurance", then this policy's terms, definitions, limits of insurance, conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the "underlying insurance".

**2.   Defense**

a.   We will have no duty to investigate or defend any claim or "suit". We will have the right and be given the opportunity to associate with any "insured" or "underlying insurer" in the investigation, settlement or defense of any  claim or "suit" that may involve this insurance.
                                   * * *

(Ex. C.)

75.   The Excess Policy defines the term "controlling underlying insurance" and

"insured" as follows:

**SECTION IV – DEFINITIONS**

**1.**   "Controlling underlying insurance" means the policy or policies that are indicated as such on the Schedule Of "Underlying Insurance".
                                   * * *

**4.**   "Insured" means any person or organization qualifying as such under the "controlling underlying insurance".

17

(Ex. C.)

76.     As discussed above in Count II, the Red Roof Inn Entities are not insureds under the CGL Policy. (Ex. B.)

77.     The Excess Policy provides that an "insured" means "any person or organization qualifying as such under the 'controlling underlying insurance'." (Ex. C.)

78.     The CGL Policy is the "controlling underlying insurance". (Ex. C.)

79.     Because the Red Roof Entities are not insureds under the CGL Policy, the Red Roof Entities are likewise not insureds under the Excess Policy. (Ex. C.)

80.     Additionally, by its plain terms, the Excess Policy provides coverage subject to the same terms, definitions, limits, conditions, and exclusions as the CGL Policy, except as where otherwise noted in the Excess Policy. **In no event, however, will the coverage afforded by the Excess Policy be broader than the coverage afforded by the CGL Policy.** (Ex. C, emphasis added.)

81.     Therefore, because, as discussed herein, there exists no coverage under the CGL Policy for the claims asserted in the *A.N.S.* Lawsuit, there likewise exists no coverage under the Excess Policy for the claims asserted in the *A.N.S.* Lawsuit. (Ex. C.)

82.      Nautilus has and had no duty under the Excess Policy to defend Shree Hari or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit.

83.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.  Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.  Find and declare that Nautilus has and had no duty under the Nautilus Policies to defend Shree Hari and/or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari and/or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit; and

c.  Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VI

## THE "ASSAULT AND BATTERY EXCLUSION" BARS COVERAGE UNDER THE EXCESS POLICY

84.  Nautilus adopts and re-alleges the allegations in paragraphs 1 through 83 of its Complaint for Declaratory Judgment as paragraph 84 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

85.  The Excess Policy contains the following exclusion relating to assault and battery:

### EXCLUSION – ASSAULT AND BATTERY
* * *

This insurance does not apply to injury or damage, costs or expenses, arising out of, resulting from caused or contributed to by any:

**1.**  Act of assault;

**2.**  Act of battery;

**3.**  Act or omission in connection with the prevention or suppression of acts of assault or acts of battery by or at the direction of any "insured".

(Ex. C, hereinafter the "Assault and Battery Exclusion".)

86.  By its plain terms, the Assault and Battery Exclusion found in the Excess Policy independently bars coverage for "injury or damage, costs or expenses, arising out of, resulting from, caused or contributed to by any…Act of assault;…Act of battery; [or] Act or omission in

19

connection with the prevention or suppression of acts of assault or acts of battery…by or at the direction of any 'insured'." (Ex C.)

87.     The *A.N.S.* Lawsuit arises directly out of the alleged physical assault and/or battery of A.N.S. at the Property. (Ex. A.)

88.     Accordingly, the Assault and Battery Exclusion independently bars coverage under the Excess Policy for the claims asserted in the *A.N.S.* Lawsuit.

89.     Nautilus has and had no duty under the Excess Policy to defend Shree Hari or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit.

90.     An actual controversy exists between Nautilus, Shree Hari, the Red Roof Inn Entities, and A.N.S., and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policies;

b.     Find and declare that the Assault and Battery Exclusion independently bars all coverage under the Excess Policy for the claims asserted in the *A.N.S.* Lawsuit;

c.     Find and declare that Nautilus has and had no duty under the Excess Policy to defend Shree Hari and/or the Red Roof Inn Entities against the *A.N.S.* Lawsuit, or to indemnify Shree Hari and/or the Red Roof Inn Entities for any judgment or settlement entered in the *A.N.S.* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

RENDIGS, FRY, KIELY & DENNIS, LLP


/s/ Christine C. Steele
Christine C. Steele (0055288)
William H. Fry (0079108)
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
P: (513) 381-9200
F: (513) 381-9206
csteele@rendigs.com
whf@rendigs.com
*Local Counsel For Nautilus Insurance Company*



**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

Dana A. Rice (Pro Hac Vice Pending)
Adam P. Joffe (Pro Hac Vice Pending)
71 S. Wacker Drive
Suite 2110
Chicago, IL 60606
P: 332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

*Attorneys For Nautilus Insurance Company*

21